**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JESSICA ADAMS,

      Plaintiff,

v.                                     Civ. No. 18-925 KG/GBW

C3 PIPELINE CONSTRUCTION, INC.,

      Defendant.


## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me pursuant to the Court's Order of Reference (*doc. 28*) and the damages hearing conducted on October 28, 2019 (*docs. 51*, *62*, *63*).  For the reasons that follow, I RECOMMEND modification of the Court's Default Judgment (*doc. 23*) in conformity with the claims and theories dropped by Plaintiff prior to trial, and an entry of damages in the total amount of $20,050,000.

### I.    BACKGROUND

This case was removed to federal court by Defendant Plains All American Pipeline, LP, from the First Judicial District Court of New Mexico on October 3, 2018. *Doc. 1.*  Defendants Alpha Crude Connector, LLC; Plains All American GP, LLC; Plains All American Pipeline, LP; Plains GP, LLC; and Plains Pipeline, LP (collectively, "Plains Defendants") filed their answer to the complaint on October 10, 2018, and concurrently filed for summary judgment.  *Docs. 4, 6.*

On May 23, 2019, the Court granted summary judgment and denied Plaintiff's

Rule 56(d) request for additional discovery. *Doc. 16*. All claims against the Plains

Defendants were thereby dismissed. *Doc. 18*. On the same day, the Court issued an

Order to Show Cause, directing Plaintiff to either effect service on Defendant C3

Pipeline Construction, Inc. or provide the Court with a written explanation why service

had not been effected. *Doc. 17*. Plaintiff filed an Affidavit of Service on June 6, 2019,

indicating that Cody Martin, the owner of C3 Pipeline Construction, Inc., had been

served at 426 Horseshoe Road, Winnfield, LA 71483 at 9:30 a.m. CDT on May 30, 2019.

*Doc. 19*. Based on Defendant C3 Pipeline's failure to answer the complaint or make an

appearance on the record, Plaintiff moved for entry of default judgment on June 23,

2019. *Doc. 21*. The Clerk's Entry of Default was filed on June 24, 2019. *Doc. 22*.

On July 22, 2019, the Court granted Plaintiff's motion and entered default

judgment on all issues of liability in favor of Plaintiff and against Defendant C3 Pipeline

Construction, Inc.[1] *Doc. 23*. On August 5, 2019, the Court entered an order referring the

case to the undersigned in order to conduct a Fed. R. Civ. P. 55(b)(2)(B) damages

hearing in the form of a jury trial. *Doc. 28*. The Federal Rules of Civil Procedure

provide that, in the case of a default judgment, the court "may conduct hearings or

---

[1] Plaintiff moved to amend the Court's entry of default judgment on November 26, 2019, in order to correct the name of the Defendant from C3 Pipeline Construction, Inc. to C3 Pipeline Services LLC. *Doc. 58*. The Court denied Plaintiff's motion, *see doc. 61*, and Defendant C3 Pipeline Construction, Inc. remains the named Defendant in this case to whom all of the undersigned's recommendations pertain.

make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."  Fed. R. Civ. P. 55(b)(2)(B).

A two-day hearing to assess the amount of damages was held before a jury on October 28, 2019.  *Doc. 51*.  The jury reached a verdict of $15,000,000 in compensatory damages and $40,000,000 in punitive damages.  *Doc. 56*.  Final entry of default judgment is now before the Court.

## II.    ADMITTED FACTS & LIABILITY

As a result of Defendant C3 Pipeline's default, the following facts were deemed admitted:[2]

(1)    Plaintiff Jessica Adams was employed by Defendant C3 Pipeline to lay crude oil pipeline in southeastern New Mexico between 2015 and 2016.

(2)    From Fall of 2015 to June of 2016, and again from August of 2016 to September of 2016, Plaintiff was sexually harassed by three fellow employees.  These employees were Mike Carrithers, the purchasing manager for C3 Pipeline; Danny Robertson, a fellow employee; and Craig Arnault, foreman of the C3 Pipeline crew based out of Hobbs, New Mexico.  Craig Arnault acted as Plaintiff's supervisor.

---

[2] Plaintiff's Complaint contains a variety of additional facts to which Defendant C3 Pipeline also admitted by defaulting.  The listed facts are the ones on which the jury was specifically instructed.  *See doc. 45* at 11.

(3) Arnault made it a condition of Plaintiff Adams' employment that she perform sexual favors for him in order to keep her job. Carrithers and Robertson represented to Plaintiff Adams that it was a condition of her employment that she perform sexual favors for them in order to keep her job.

(4) Carrithers, Robertson, and Arnault repeatedly and unwantedly touched Plaintiff Adams in sexually offensive ways.

(5) Craig Arnault additionally engaged in the following behaviors: sending Plaintiff Adams offensive and unwanted pornographic images; making sexually explicit comments; and making comments with reference to Plaintiff Adams participating in sexual activity.

(6) In addition to protesting to Arnault and Carrithers, Plaintiff Adams contacted corporate management of a related company to complain about the sexually harassing conduct.

(7) In response to Plaintiff Adams' complaints and refusal to perform sexual acts with him, Craig Arnault repeatedly threatened to fire her.

(8) C3 Pipeline took no action to investigate Plaintiff Adams' complaints.

*See doc. 1-1*; *doc. 45* at 11.

In addition to deeming these facts admitted, the Court found Defendant C3 Pipeline liable on every claim alleged by Plaintiff in her Complaint. *Doc. 23* (entering default judgment in favor of Plaintiff "on all issues of liability"). These claims were as

follows: sexual harassment in violation of Title VII and the New Mexico Human Rights

Act ("NMHRA"), retaliation in violation of Title VII and the NMHRA, battery, slander

and libel per se, intentional infliction of emotional distress, negligence, gross

negligence, and negligent hiring, training, retention, and supervision. *See doc. 1-1.*

### III.   LEGAL STANDARD

Following the entry of a default judgment on liability, the court must "determine

the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). Plaintiff requested a jury trial in

order to assess her damages, which the Court granted. *See docs. 25, 28.* "[A]bsent an

award so excessive or inadequate as to shock the judicial conscience and to raise an

irresistible inference that passion, prejudice, corruption, or other improper cause

invaded the trial, the jury's determination of [damages] is considered inviolate." *Karns*

*v. Emerson Electric Co.*, 817 F.2d 1452, 1460 (10th Cir. 1987) (internal citations and

quotation omitted) (alteration in original).

"When state substantive law governs a claim for relief, state law also provides

the appropriate standard for a district court's decision as to whether the verdict was

excessive." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1167 (10th Cir.

2017) (applying Oklahoma law to determine excessiveness of compensatory damages

for negligence claims). Under New Mexico law, as under federal law, "[a] jury's

damages award will be upheld unless it appears that the amount awarded is so grossly

out of proportion to the injury received as to shock the conscience." *Morga v. FedEx Ground Package Sys.*, 420 P.3d 586, 593 (N.M. Ct. App. 2018) (citation omitted).

## IV.    MODIFICATION OF JUDGMENT AS TO LIABILITY

As a preliminary matter, the undersigned recommends several amendments to the Court's entry of default judgment as to liability in this case.  A defaulting defendant "admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016).  By defaulting in this case, Defendant C3 Pipeline therefore admitted to all of the well-pleaded facts contained in Plaintiff's Complaint.  However, "even in default, a defendant is not prohibited from challenging the legal sufficiency of the admitted factual allegations. The judgment must be supported by a sufficient basis in the pleadings." *Id*. at 765 (citing *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010)).  This principle means that the facts alleged in Plaintiff's Complaint, admitted as true by Defendant C3 Pipeline, must adequately support each of the claims for which default judgment is entered.

Prior to the damages hearing, Plaintiff voluntarily agreed to make several modifications to the entry of liability against Defendant C3 Pipeline.[3]  Accordingly, I recommend modification of the entry of default judgment as follows to include the agreed-upon changes.

---

[3] The jury was not instructed on any of the voluntarily dismissed claims or theories of liability. *See generally doc. 45*.

A.  Defamation Claims

Plaintiff agreed to dismissal of two of her claims during the pretrial conference

held on October 22, 2019.  *See doc. 42* at 1–2.  Specifically, the Complaint included claims

of slander and libel per se against Defendant C3 Pipeline.  *See doc. 1-1* at 7.  Plaintiff

alleged:

> Arnault frequently made offensive and sexual comments and statements
> to Jessica Adams because of her gender.  Such comments and statements
> were so obviously hurtful and defamatory that the same constitute
> slander and libel per se as recognized under the common law in the State
> of New Mexico.

*Id*.

New Mexico law does not distinguish between slander and libel, treating both as

claims for defamation.  *Smith v. Durden*, 276 P.3d 943, 948 (N.M. 2012).  The tort of

defamation, as set forth in New Mexico's Uniform Jury Instructions, has nine elements.

*Fikes v. Furst*, 81 P.3d 545, 549 (N.M. 2003) (citing UJI 13-1002(B) NMRA 2003).  One of

these elements is publication.  UJI 13-1002(B)(1) NMRA 2003.  "Publication is an

intentional or negligent communication to one *other than the person defamed*."  *Id*. at 13-

1003 (emphasis added).

In her Complaint, however, Plaintiff alleged only that one of Defendant's

employees made offensive comments "to Jessica Adams [Plaintiff]."  *Doc. 1-1* at 7.

Recognizing that she had not alleged facts sufficient to establish defamation, Plaintiff

agreed to dismiss her claims of libel and slander prior to the damages hearing. The

undersigned recommends that the Court modify its entry of default accordingly.

B. Theories of Liability

To the extent that the Court entered default judgment on particular theories of

liability contained in Plaintiff's Complaint, Plaintiff voluntarily dropped two theories of

liability before the damages hearing and I recommend a corresponding modification of

the entry of default.

First, Plaintiff agreed to drop her theory that Defendant C3 Pipeline was either

directly or vicariously liable based on the supervisory conduct of Danny Robertson and

Mike Carrithers. *See doc. 42* at 2. These theories of supervisory liability were originally

alleged with respect to the following claims: sexual harassment and retaliation in

violation of Title VII; sexual harassment and retaliation in violation of the NMHRA;

battery; intentional infliction of emotional distress; and negligence. *See generally doc. 1-

1; doc. 45*.[4] Because Plaintiff conceded that the facts alleged in her Complaint did not

support supervisory liability based on Robertson's and Carrithers' conduct and

authority as alleged, the jury was not instructed that their conduct could create liability

on the part of Defendant C3 Pipeline. *See doc. 45*. Plaintiff continued to rely on her

---

[4] Because no theory of supervisory liability applies to Plaintiff's claim of negligent hiring, training, retention, and supervision, that claim will be unaffected by this modification. The actions of Carrithers and Roberts remain relevant to that claim. *See doc. 1-1* at 9.

theory of supervisory liability with respect to Craig Arnault, and the undersigned recommends no modification of that theory in the entry of default. *See id*.

Second, Plaintiff agreed to omit any jury instruction about the ratification theory alleged in her Complaint. *See doc. 42* at 2; *doc. 1-1* at 10. The jury received no instruction regarding ratification. Therefore, to the extent that the Court's entry of default judgment (*doc. 23*) adopted Plaintiff's ratification theory, I recommend modification of the entry of default to exclude it.

## V.  ENTRY OF DAMAGES

A.  Damages for Title VII Claims

Plaintiff brought claims under two provisions of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. Specifically, she alleged retaliation in violation of 42 U.S.C. § 2000e-3(a) and sexual harassment in violation of 42 U.S.C. § 2000e-2. *See doc. 1-1* at 6–8; *doc. 45* at 13–14. The jury awarded Plaintiff $5,000,000 in compensatory damages and $30,000,000 in punitive damages under Title VII.[5] *See doc. 56* at 2, 6. However, 42 U.S.C. § 1981a places a statutory limitation on damage awards under Title VII, including claims under §§ 2000e-2 and 2000e-3. *See* 42 U.S.C. § 1981a(a)(1). This limitation caps both compensatory and punitive damage awards combined, and varies as a function of the defendant company's number of employees. *Id*. § 1981a(b)(3).

---

[5] These damage awards were specific to Plaintiff's Title VII claims and were explicitly excluded from the amounts awarded for Plaintiff's other claims. *See doc. 56* at 2, 6.

Following the damages hearing, Plaintiff was ordered to provide evidence about

Defendant C3 Pipeline's number of employees. *See doc. 50* at 2. Plaintiff timely filed a

brief explaining that, despite good faith efforts to determine Defendant C3 Pipeline's

official number of employees, "no official documents could be located confirming a

number." *Doc. 57* at 10. Instead, Plaintiff attached her own affidavit "giving her best

estimate of C3's employee count." *Id*. Her estimate is that C3 Pipeline employed over

100 workers in the years of 2015 and 2016. *Id*. at 24. Pursuant to § 1981a(b)(3)(B),

damage awards against employers with more than 100 and fewer than 201 employees

may not exceed $100,000.

Based on the uncertainty of Plaintiff's estimate, however, the undersigned cannot

accept her affidavit as sufficient evidence that Defendant C3 Pipeline employed over

100 workers. *See*, *e.g.*, *Mizwicki v. Gerald Helwig*, 196 F.3d 828, 832 (7th Cir. 1999) ("off-

the-cuff estimate" insufficient to establish number of employees for purposes of Title

VII). I therefore recommend that the Court limit Plaintiff's Title VII damages pursuant

to § 1981a(b)(3)(A), which is the minimum category of damages and provides for total

damages of $50,000 against an employer with fewer than 101 employees.[6]

---

[6] Section 1981a(b)(3)(A) also requires that the employer "has more than 14 employees . . . in each of 20 or more calendar weeks in the current or preceding calendar year." Particularly in light of this case's posture, I find Plaintiff's sworn statement that she personally "observed that C3 Pipeline employed several crews of ten to fifteen workers in New Mexico and also had crews working in Ohio" during her time employed with C3 Pipeline in 2015 and 2016 to be sufficient for purposes of establishing that Defendant C3 Pipeline employed more than 14 employees during the relevant time period. Plaintiff additionally alleged in her Complaint that, at "all times pertinent and relevant to this suit," all Defendants were "classified as Plaintiff's employer under . . . the federal Title VII Civil Rights Act." *Doc.*

B.  Damages for State Law Claims

The jury awarded a total of $10,000,000 in compensatory damages for Plaintiff's

combined state law claims.  *Doc. 56* at 2.  The jury also awarded $10,000,000 in punitive

damages for Defendant C3 Pipeline's negligence in hiring, training, retention, and

supervision of its employees.  *Id*. at 4.  I recommend that the Court enter judgment in

the full amount of these damages.

The jury's compensatory damage award for Plaintiff's state law claims, while

considerable, does not "shock the conscience."  *See Morga*, 420 P.3d at 593.  Plaintiff

presented evidence of severe, pervasive, and recurring sexually harassing conduct by

Defendant's employees, particularly by her supervisor Craig Arnault.  For a period of

several months in 2016, Arnault's harassment was virtually unrelenting.  When Plaintiff

arrived in Hobbs, New Mexico, Arnault forced her to live in his RV for two to three

weeks as a condition of keeping her job.  *Doc. 62* at 58–59, 74.  He made Plaintiff wear

the lingerie that he provided and have regular sex with him.  *Id*. at 58–59.  When she

later moved to a hotel, he texted her approximately eight or nine times a day with lewd,

explicit messages and images.  *Id*. at 75–76.  Plaintiff was also forced to perform regular

sexual acts for Arnault during work hours throughout her employment with C3

_____

1-1 at 4.  Defendant C3 Pipeline chose not to deny this allegation.  *Cf. Mizwicki v. Gerald Helwig*, 196 F.3d
828, 832 (7th Cir. 1999) ("This argument ignores the fact that Helwig did deny that it was an employer
within the meaning of the Act.  Several times.").  By definition, this means that Defendant C3 Pipeline
employed at least 15 individuals during the relevant time period.  *See Ferroni v. Teamsters, Chauffeurs &
Warehousemen Local No. 222*, 297 F.3d 1146, 1150 (10th Cir. 2002) (citing 42 U.S.C. § 2000e(b)).

Pipeline in summer and fall of 2016.  *Id*. at 63.  Plaintiff testified that Arnault made her

perform oral sex "[a]bout every other day, and then the every other day he wanted

sex." *Id*. at 69.

Plaintiff also presented evidence of Defendant C3 Pipeline's negligence in hiring,

training, supervising, and retaining its employees.  In 2015, Mike Carrithers, whom she

believed had supervisory authority over her, represented to Plaintiff that she had to

have sex with him to keep her job.  *Id*. at 43–44, 46.  Plaintiff explained that this kind of

behavior was common and "how it was" among C3 Pipeline employees.  *Id*. at 46, 61–

62.  She testified that Arnault and other supervisors and foremen "were all on meth."

*Id*. at 86.  She described her multiple unsuccessful efforts to inform other employees and

seek help.  *Id*. at 65, 96–99.  Plaintiff also testified about Arnault's close relationship with

the owners of C3, which she believed insulated him from any consequences for his

behavior and made her powerless to prevent his harassment and retaliation without

losing her job.  *Id*. at 86–88.

Plaintiff also presented substantial testimony about the effect of this misconduct

on her mental state and economic situation.  Following her departure from C3 Pipeline,

Plaintiff struggled with immense guilt and shame and stayed locked in her

condominium for several months.  *Id*. at 104–05.  At one point she attempted suicide by

taking an entire bottle of OxyContin.  *Id*. at 106–07.  She described being afraid to kiss

her children in case she had contracted a disease from Arnault.  *Id*. at 103.  Because

Plaintiff was unable to work during this period, she lost her condominium, her credit

was ruined, and she was jailed for delinquency in paying child support. *Id*. at 106, 114.

She testified that she had tried going to counseling several times and believed it would

be helpful to continue, but that she could not afford to go regularly. *Id*. at 112–13.

Today, Plaintiff still experiences continuing, unwanted thoughts about her harassment

in her day-to-day life. *Id*. at 109–10.

Given the severity of the sexual harassment in this case and the undisputed

evidence of its profound impact on Plaintiff's mental and emotional health, as well as its

financial and professional impact, the undersigned does not find the jury's award of

compensatory damages excessive. There is substantial evidence to support the award

of $10,000,000 and no indication of passion, prejudice, undue influence or mistake. *See*

*Morga*, 420 P.3d at 593 (quoting *Wachocki v. Bernalillo Cty. Sheriff's Dep't*, 228 P.3d 504,

517 (N.M. Ct. App. 2009), *aff'd*, 265 P.3d 701 (N.M. 2011)). Therefore, I recommend that

the Court enter a compensatory damages award in the amount of $10,000,000 for

Plaintiff's state law claims.

I further find that the jury's award of punitive damages in the amount of

$10,000,000 was not "grossly excessive or arbitrary" so as to violate the Fourteenth

Amendment of the United States Constitution. *See State Farm Mut. Auto Ins. Co. v.*

*Campbell*, 538 U.S. 408, 416 (2003). The one-to-one ratio of punitive to compensatory

damages ($10,000,000 compensatory, $10,000,000 punitive) weighs against a finding of

constitutional excessiveness in this case. *See id.* at 418, 425. Plaintiff also presented

substantial evidence of the reprehensibility of Defendant C3 Pipeline's misconduct.

Particularly in the absence of any party's objection, I recommend that the Court enter

punitive damages against Defendant C3 Pipeline in the full amount of the jury's award.

## VI.    CONCLUSION

For the foregoing reasons, I RECOMMEND modification of the Court's Entry of

Default Judgment as to Liability (*doc. 23*):

- to exclude the claims of slander and libel per se;
- to exclude any theory of supervisory liability based on the actions of Mike
  Carrithers and Danny Robertson; and
- to exclude any theory of liability based on Defendant C3 Pipeline's
  ratification of its employees' misconduct.

I FURTHER RECOMMEND entry of damages in the total amount of **$20,050,000**,

as follows: **$10,000,000** in compensatory damages for Plaintiff's state law claims;

**$10,000,000** in punitive damages for Defendant C3 Pipeline's negligent hiring, training,

retention, and supervision of its employees; and **$50,000** total damages for all claims

brought under Title VII of the Civil Rights Act.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**